NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| DEBRA KARSTEIN, : <br> : <br> Plaintiff, : <br> v. : <br> : <br> COMMISSIONER OF SOCIAL SECURITY, : <br> : <br> Defendant. : | Civil No. 17-04502 (RBK) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court on the appeal of Plaintiff Debra Karstein (Doc. No. 1) for review of the final decision of the Administrative Law Judge ("ALJ"). The ALJ issued a partially favorable decision on Plaintiff's application for Social Security Disability benefits, finding that Plaintiff was not disabled as defined in the Social Security Act between May 10, 2013 and December 12, 2015, but that she became disabled on December 13, 2015. As explained below, the ALJ's determination that Plaintiff was not disabled between May 10, 2013 and December 12, 2015 is **VACATED**, and this case is **REMANDED** for further proceedings.

I. BACKGROUND[1]

A. Plaintiff's History

Plaintiff was born on December 13, 1965 and is currently fifty-one years old. (R. at 87.) Among other desk jobs, Plaintiff worked as an accounts specialist at TD Bank in New Jersey. (R. at 53.) Plaintiff testified that she stopped working in May 2013 because of injuries she

---

[1] The record before this Court is voluminous. Thus, the Court sets forth only those background facts as necessary for context and those that are most relevant to resolution of the instant motion. "R." in citations refers to pages in the administrative record.

1

sustained in a 2008 car accident, in which her vehicle was struck by a tow truck (R. at 53, 59, 409.) From the incident and its fallout, Plaintiff has gained weight and is obese. (R. at 64, 72.) Plaintiff's medical records from May 2015 indicate that she is approximately 5'2", 230 pounds, with a BMI index of 42.06. (R. at 683.)

On June 18, 2013, Plaintiff filed a Title II application for disability under the Social Security Act. (R. at 23.) Plaintiff alleged disability beginning on May 10, 2013. (R. at 23.) Plaintiff's claim was initially denied in October 2013. (R. at 23.) In March of 2014, Plaintiff's claim was denied again upon reconsideration. (R. at 23.) Thereafter, Plaintiff requested a hearing, held in April 2016. (R. at 23.)

At the hearing before the ALJ, Plaintiff stated that she experiences a host of ailments because of the car accident. Plaintiff testified that she experiences sharp burning pains in her neck that go down into her back and legs. (R. at 53.) She stated that suffers from sciatica, which causes pain in her legs. (R. at 61.) According to Plaintiff, her pain became so bad that she was unable to sit for any length of time without experiencing burning and pain from her back to the top of her neck and all the way down her spine. (R. at 59.) To relieve this pain, Plaintiff explained, she laid on the floor at work multiple times per day. (R. at 59.) Plaintiff also stated that she required pain medication to get through the days. (R. at 59.) Because of the pain, Plaintiff stated, she became depressed, anxious, and had two suicidal incidents. (R. at 60.) Plaintiff estimated that she missed about ten or eleven days of work each month because of her pain. (R. at 62.) While out on leave, Plaintiff was ultimately terminated from her job at the bank. (R. at 71.)

Plaintiff also suffers from other ailments, including in her knees, which she testified need bilateral knee replacements. (R. at 61.) Since 2008, Plaintiff explained, she has walked with a

2

cane, which she uses both inside and outside of the house. (R. at 52.) Plaintiff noted that when she does not use the cane inside the house, she leans on walls or other available means to maneuver. (R. at 52.) She testified that she sometimes walks about ten feet from her mobile home to her mailbox, but nine times out of ten her neighbor brings her the mail. (R. at 65.) There are four steps outside Plaintiff's home, but she stated that they are very hard for her to walk up and down. (R. at 66.) To do so, she explained, she must hold a railing, but if she twists her back, she gets a "sharp, shooting pain that takes [her] breath away." (R. at 66.) She described the pain shooting down her spine and both legs. (R. at 66.)

In August of 2013, Plaintiff stated that she had difficulty lifting more than ten to fifteen pounds, squatting, walking more than fifty steps, sitting more than ten minutes, using her hands, bending, standing more than five minutes, reaching, and kneeling, among other things. (R. at 29.) When Plaintiff goes shopping, she holds onto a cart or rides on a motorized one. (R. at 64.) She was able to help care for her pet, prepare simple meals, do some house chores like folding and emptying the dishwasher despite manipulative difficulties, and she could drive for short periods of time. (R. at 31.)

Plaintiff testified that after she stopped working, doctors attempted many injections to aid her ailing back. (R. at 71.) She also explained that doctors attempted—but were forced to stop—a back surgery to fix an annular tear in at Plaintiff's L5-S1. (R. at 71.) Plaintiff stated that according to spine specialist Dr. Joan O'Shea, Plaintiff is not a candidate for back surgery because of her obesity, and because she has too many other issues with her back, including herniation and bulging discs. (R. at 72.) Plaintiff also stated that she is waiting to have knee replacement surgery to fix a bone on bone issue but must first lose at least thirty pounds. (R. at 72.)

Plaintiff explained that she was living on long-term disability, but those payments ceased in 2014, allegedly due to a clerical error. (R. at 67.) According to Plaintiff, her doctor accidentally indicated on her paperwork that she both could and could not work and he signed in both places. (R. at 68.) Plaintiff stated that she has hired an attorney to try to resume the long-term disability payments as her savings are almost gone. (R. at 68.)

### B. Other Medical History

Medical records exist from both before and after Plaintiff's alleged disability onset date of May 10, 2013. In 2008, an MRI of Plaintiff's lumbar spine showed mild bulging of the annuls at L4-L5; L5-S1 disc dehydration with mild intervertebral disc space narrowing; and bulging of the annuls with a tiny central annular tear. (R. at 278.) A 2008 MRI of Plaintiff's cervical spine similarly showed mild reversal of the normal cervical lordosis; mild disc dehydration throughout; mild right paramedian disc bulging at C3-C4; and mild bulging of the annuls at C5-C6 and C6-C7. (R. at 282.) A 2008 MRI of Plaintiff's thoracic spine showed disc bulging at C5-C6 and C6-C7; a schmorl's node along with mild loss of stature involving the central superior endplate of T4; disc desiccation at T3-T4, T5-6 through T9-T10; left paramediation herniation at T5-T6 through T7-T8; and disc bulging at T3-T4, T8-T9, and T9-T10. (R. at 285.) Each MRI noted radiating pain, radiculopathy, or both. (R. at 278, 282, 285.)

Medical evidence after Plaintiff's alleged onset date also shows various pains and ailments. Records from Plaintiff's rheumatologist from May 15, 2013, indicate that Plaintiff suffers from fibromyalgia, spinal stenosis, and osteoarthritis, among other things. (R. at 294.) That record indicates that Plaintiff suffered from "horrendous pain everywhere," including burning in her feet and heavy-feeling arms. (R. at 294.) The doctor also reported crepitus in the bilateral knees. (R. at 296.) An MRI from July 2013 showed findings like those from 2008: a

4

posterior annular tear at L5-S1 with small right paracentral disc herniation; minimal anterolisthesis of L4 with facet anthropathy; left C5 radiculitis, acute and mild; right C5-C6 cervical radiculitis, chronic, mild; left distal median sensory neuropathy; right S1 radiculopathy acute and mild; and bilateral L5 radiculitis, chronic/mild. (R. at 414.) Dr. Jeffrey Gleimer, the doctor of record for these findings, wrote that he believed Plaintiff's disc herniation was contributing to her "significant" pain. (R. at 415.)

Additional imaging from July 2013 showed left C-5 cervical radiculitis, right C5-C6 cervical radiculitis, left distal median sensory neuropathy, right S1 radiculopathy, and bilateral L5 lumbar radiculitis. (R. at 424.) The report also indicated restricted motion in the cervical and lumbar paraspine, reduced deep tendon reflexes, and diminished sensation in Plaintiff's left index finger. (R. at 420.) In a record from June 24, 2013, Plaintiff's Spurling's test was positive for upper extremity pain, her thoracolumbar spine had limited motion at sixty percent, her cervical spine motion was about seventy-five to eighty percent, and she had a positive straight leg raising for lumbar pain with a radicular component. (R. at 426.) Again in October 2013, Dr. Costa reported that Plaintiff's cervical spine motion was about eighty-five percent while her thoracolumbar spine was seventy percent with a radicular component and a positive Spurling's test. (R. at 460.) X-ray records from August 2013 reflect that Plaintiff had bilateral osteoarthritis, medial joint space narrowing on the left knee, and degenerative osteophyte of the patella. (R. at 418.)

Finally, December 2013 records provided by Dr. Domsky indicate that Plaintiff exhibited loss of motor strength in her upper extremities, decreased range of motion in her bilateral upper extremities, an antalgic gait, and that she was using a cane to ambulate. (R. at 494.) Dr. Domsky reported that Plaintiff, who had undergone multiple cervical and lumbar epidural steroid

injections and thoracic outlet surgery, still exhibited neck pain radiating to her left arm with numbness, tingling, and paresthesias, back pain radiating to her ribs, as well as low back pain radiating to her right and left leg with numbness, tingling, and paresthesias. (R. at 492.) Dr. Domsky noted that MRI imaging revealed degenerative disc disease, minimal degenerative anterolisthesis at L4-5, a posterior annular tear at L5/S1, and a small right paracentral disc herniation. (R. at 493.) Although other 2013 exams found normal range of motion in Plaintiff's extremities and intact sensation in Plaintiff's lower extremities (R. at 31, 32), Dr. Domsky's lower extremity examination revealed some loss of motor strength, decreased range of motion, an antalgic gait, decreased deep tendon reflexes, a positive straight leg raising, a positive Thomas test, pain while toe walking, and an inability to heel walk. (R. at 495.)

### C. ALJ's Decision

In June 2016, the ALJ issued a partially favorable decision in this matter, finding that although Plaintiff was not disabled from May 10, 2013 to December 12, 2015, she became disabled on December 13, 2015—her 50th birthday. (R. at 23–41.) In reaching this conclusion, the ALJ applied the familiar five-step framework for determining whether an individual is "disabled" under the Social Security Act. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since Plaintiff's alleged onset date of May 10, 2013. (R. at 25.) At step two, the ALJ found that since Plaintiff's alleged onset date of disability, she suffered from severe impairments, including degenerative disc disease of the lumbosacral/cervical spine, osteoarthritis of the knees, carpal tunnel syndrome, affective disorder, anxiety disorder, fibromyalgia, hearing loss, and obesity. (R. at 25.)

Relevant to the motions before the Court, the ALJ concluded at step three that although Plaintiff suffered from severe impairments at step two, she did not have an impairment or

combination of impairments that meet or medically equaled the severity of one of the listed impairments. (R. at 25–26.) Among other listings, the ALJ considered listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine), but found that Plaintiff did not satisfy either's requirements (R. at 26.) The ALJ also stated that Plaintiff's obesity "had been taken into account in reaching the conclusion" contained in the ALJ's decision, including step three, "even though no treating or examining medical source may have specifically attributed additional or cumulative limitations to the claimant's obesity." (R. at 28.)

The ALJ then discussed Plaintiff's residual functional capacity ("RFC"), which evaluates how much a claimant can do despite any impairments. (R. at 28.) The ALJ found that Plaintiff could perform sedentary work as defined in 20 C.F.R. 404.1567(a), except that she must be afforded the opportunity to alternate positions. (R. at 28.) The ALJ continued, explaining that Plaintiff can occasionally climb ramps or stairs, balance, stoop and crouch, although she can never kneel, crawl, climb ladders, ropes, or scaffolds, and can never be exposed to unprotected heights. (R. at 28.) The ALJ also found that Plaintiff is further limited to simple, routine tasks, can make only simple decisions, and is only capable of working in a moderate noise environment. (R. at 28.) Finally, the ALJ explained that Plaintiff requires a cane for ambulation. (R. at 28.)

Next, the ALJ concluded that before December 13, 2015, jobs existed in significant numbers in the national economy that Plaintiff could have performed, given her age, education, work experience, and RFC. (R. at 36.) But, the ALJ concluded, after December 13, 2015, no jobs in the national economy existed in significant numbers that Plaintiff could have performed. (R. at 37.) Thus, the ALJ concluded that although Plaintiff was not disabled before December 13, 2015, she became disabled on that date and has continued to be disabled since. (R. at 37.)

Plaintiff contends that the ALJ erred in denying benefits for the period between May 10, 2013—Plaintiff's alleged onset date—and December 12, 2013. The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. at 1–3.) This appeal followed.

## II. STANDARD OF REVIEW

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See* S*chonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is

a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. DISCUSSION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Here, the ALJ used the established five-step evaluation process to determine whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak*, 777 F.3d at 611–12. First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that she has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the claimant must show that she cannot perform her past work, and the ALJ must assess the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e).

If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant is capable of performing based on her RFC, age,

education, and work experience. *Id.*; 20 C.F.R. § 404.1520 (a)(4)(v). If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

Here, Plaintiff challenges the ALJ's determinations at steps three, four, and five. As set forth below, the Court finds the ALJ erred in its step three analysis, and remands on that basis. Thus, the Court need not—and does not—reach the parties' additional arguments as to steps four and five.

**A. Step Three**

Plaintiff argues that the ALJ's step three analysis was flawed because it was "factually wrong and not accompanied by a sufficient rationale." (Pl.'s Br. at 26.) In support of Plaintiff's argument that the ALJ's analysis was too conclusory, Plaintiff cites *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000) (stating that the Third Circuit "requires the ALJ to set forth the reasons for his decision"). In *Burnett*, the Third Circuit found the following step three analysis insufficient: "said impairment failed to equal the level of severity of any disabling condition contained in Appendix 1, Subpart P of Social Security Regulations No. 4." 220 F.3d at 119. Nevertheless, "*Burnett* does not require an ALJ to use 'magic language' or adhere to a particular analytical format. Rather, the purpose of *Burnett* is to ensure sufficient development of the record and explanation of findings to permit meaningful judicial review." *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379 (3d Cir. 2004); *see also Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Here, Plaintiff argues that the ALJ's conclusions that she did not meet listing 1.02(A) and 1.04(A) were insufficient and conclusory. The Court agrees as to listing 1.04(A), and because remand is warranted on that basis, the ALJ, on remand, should further develop the record as necessary for any 1.02(A) analysis that is required.

### 1. Listing 1.04

Plaintiff contends that she is disabled according to listing 1.04(A). Listing 1.04(A) provides as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Here, the ALJ found that Plaintiff suffers from severe degenerative disc disease. (R. at 25–26.) Thus, the ALJ agreed that Plaintiff suffers from a spine disorder. The ALJ's analysis of 1.04(A)'s requirements, however, consisted of one statement: "although the claimant has degenerative disc disease of the thoracolumbar/cervical spine, a thorough review of the medical evidence fails to reveal (a) neuro-anatomic distribution of pain, limitation of the motion of the spine, motor loss accompanied by sensory or reflex loss." (R. at 26.) In essence, the ALJ repeated the requirements of the listing, including subparts b and c, which Plaintiff does not challenge here, and concluded that no medical evidence met the requirements, without discussing Plaintiff's medical evidence. (R. at 26.) Nor did the ALJ accompany her conclusions with citations to the record. Plaintiff argues that this Court should remand because the ALJ's decision lacks sufficient explanation as to why Plaintiff does not meet the listing. (Pl. Rep. Br. at 2.) Defendant's only opposition on this point claims that the analysis is not conclusory, but "succinct[]" yet "thorough[]." (Def. Br. at 6.)

The ALJ should have provided more of an explanation as to why Plaintiff did not meet listing 1.04(A). *See Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006) ("It is not enough for the ALJ to conclude that no medical evidence meets or equals any of the listings,

in the absence of any discussion of why the specific evidence provided by the claimant was not equivalent."). The court in *Stockett v. Comm'r of Soc. Sec.* held similarly. 216 F. Supp. 3d 440, 455 (D.N.J. 2016). There, like here, the ALJ found that the claimant's "impairment of degenerative disc disease does not meet Listing 1.04." *Id.* Like here, the ALJ's reasoning noted the listing's requirements without more: as the ALJ wrote, the claimant in *Stockett* did not meet listing 1.04(A) because "she does not have one of the listed disorders (herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture resulting in a compromise of the nerve root or spinal cord) *in conjunction with* evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, in connection with the lumbar spine impairment, also a positive straight leg raising test (sitting and supine)." *Id.* (emphasis in original).

The court held that "[f]rom the ALJ's limited discussion of Listing 1.04A, the Court finds his Step Three finding to be conclusory" and remanded for the ALJ to "fully develop the record and explain his findings at step three, including an analysis of whether and why" the claimant's impairments "are or are not equivalent in severity to" the listing. *Id.*; *see also Tursky v. Colvin*, 2015 WL 4064707, at *18–19 (D.N.J. 2015) (explaining that "[b]eyond one conclusory statement finding that the plaintiff's impairments did not meet or equal listing 1.04," the ALJ failed to "explain or discuss the requirements in listing 1.04," requiring remand for further record development); *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 375 (D.N.J. 2013) ("In light of the many types of spinal and neurological symptoms and diagnoses in the record, the ALJ's single conclusory sentence with respect to Listings 1.04 and 11.00 . . . requires remand for

explanation of the ALJ's determination that Lippincott's impairments do not meet or equal Listings 1.04 or 11.00."); *Smith v. Astrue*, No. 11-cv-6811, 2012 WL 5867174, at *4 (D.N.J. Nov. 19, 2012) (remanding when ALJ found that "the medical evidence does not support a finding of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis" because analysis failed to "discuss evidence supporting the conclusions," "assign weight to or draw conclusions about the credibility of such evidence," and "discuss evidence contradicting the conclusions").

Despite the conclusory analysis, Plaintiff contends, the record contains medical evidence suggesting that Plaintiff could meet listing 1.04(A). (Pl.'s Br. at 25.) For example, Plaintiff points to a July 29, 2013 MRI of Plaintiff's cervical spine showing annular bulges running from C3-4 through C6-7, as well as an MRI from a month later of the lumbar spine showing anterolisthesis at L4-5, a herniation at L5-S1, and an annular tear at L5-S1. Because of diminished sensation in her left hand and reduced reflexes, Plaintiff underwent an EMG, which showed left C5 radiculitis, right C5 and C6 cervical radiculitis, right S1 radiculopathy, and bilateral L5 lumbar radiculitis. In December 2013, Dr. Domsky found Plaintiff to have reduced strength and decreased range of motion in her upper extremities. In her lower extremities, Dr. Domsky found decreased strength and reduced range of motion, including decreased deep tendon reflexes and a positive straight leg raising test. Parts of the ALJ's opinion at other steps also note facts that could bear on the step three analysis, including that Plaintiff experienced back and neck pain at a 5 out of 5 severity, pain down her neck, back, down her legs into her arms, numbness and tingling in her feet, numbness, and pain radiating to her ribs. (R. at 31–33.) The ALJ also noted testimony from Plaintiff's fiancé detailing her difficulties standing and limited mobility, as

well as Plaintiff's report of muscle weakness, and a July 2013 examination showing decreased range of motion. (R. at 29–31.)

Whether or not this evidence and any other record evidence ultimately suffices, the ALJ must explain the step three reasoning. *See Hoffman v. Astrue*, No. 11-CV-1227, 2011 WL 7070955, at *4 (M.D. Pa. Dec. 16, 2011) ("The Step Three analysis in a case such as this where there is an apparent basis in the medical evidence to support a finding of the presence of the essential elements of a Listing definition must, to be rational and complete . . . state findings as to each of the elements of the appropriate Listing(s) and an explanation for why the claimant is found or not found to meet or equate to that element."); *Allen v. Comm'r of Soc. Sec.*, No. 10-cv-2614, 2011 WL 1321985, at *9 (D.N.J. Mar. 30, 2011) (remanding for ALJ to "explain his findings at step three" when ALJ concluded that upon reviewing the medical evidence, no "medical source report[ed] signs and/or findings establishing that the claimant's impairments are of a severity to meet or equal the criteria of that listing," because that analysis did not "set forth the reasons why the claimant does not meet a listed impairment").

Defendant does not argue that substantial evidence supports the ALJ's otherwise conclusory step three analysis when viewing the record *as a whole*. *See Jones*, 364 F.3d at 504.[2]

---

[2] In some cases, analysis of medical evidence at other steps may cure a conclusory step three decision that does not analyze that evidence. *See Allen*, 2011 WL 1321985 at *9. Although Defendant does not make this argument, it is not clear that this is such a case. At step four, the ALJ noted medical evidence in the record that may not necessarily be inconsistent with the listing's requirements. For example, the ALJ noted that Plaintiff retained "85% normal range of motion" in the paravertebral region, "70% normal" in thoracolumbar spine motion, and positive straight leg raising for lumbar pain. (R. at 31–32.) That may be consistent with limitation of motion of the spine motion under listing 1.04(A). The ALJ also noted an orthopedic spine consultation showing an antalgic gait, pain with range of motion movements, that lower extremity sensation was "grossly intact," as well as December 2013 exam, which showed decreased reflexes in the lower extremities and at least some decreased strength in the upper and lower extremities. (*Id.*) This may be consistent with motor loss accompanied by either sensory or reflex loss. Finally, the ALJ noted instances of radiculopathy, radiating pain, tingling, and

Instead, Defendant makes two arguments, which essentially contend that any error in the ALJ's analysis was "harmless" because Plaintiff cannot show evidence to meet the listing. *See Rivera*, 164 F. App'x at 263 (declining to remand because conclusory step three analysis was "harmless" error). First, Defendant argues that Plaintiff cannot meet the requirements of listing 1.04(A) because Plaintiff does not point to findings of "nerve root compression." (Def. Br. at 8.) But if credited, Plaintiff's radiculopathy may support that finding. *See Stockett*, 216 F. Supp. 3d 440, 456–57 ("As for nerve root compression, the Plaintiff notes that she has been repeatedly diagnosed with radiculopathy, which is evidence of nerve root compression."); *Killen v. Stryker Spine*, No. 11-cv-1508, 2012 WL 4482371, at *1 n. 4 (W.D. Pa. Aug. 21, 2012) ("Radiculopathy is the medical term for the pain and other symptoms resulting from a compressed nerve root."); *Caraballo v. Astrue*, No. 11-cv-00112, 2012 WL 983579, at *8 n. 27 (M.D. Pa. Mar. 22, 2012) ("Radiculopathy is a condition due to a compressed nerve in the spine that can cause pain [,] numbness, tingling, or weakness along the course of the nerve."); *Wojciechowski v. Barnhart*, No. 02-cv-263, 2004 WL 878468, at *2 n. 2 (D. Del. Apr. 21, 2004) ("Radiculopathy is a disease of the spine in which there is a compression on the nerve roots . . . "). Plaintiff also had a positive Spurling's test. *See Stockett*, 216 F. Supp. 3d at 456–57 ("Additionally, the medical

---

numbness, which could be consistent with neuro-anatomic distribution of pain. (*Id.* at 31–33.) Even if these or other later statements by the ALJ could be viewed as supporting the ALJ's otherwise conclusory step three finding that Plaintiff was not disabled, they do not, in themselves, explain *why* the ALJ concluded that the medical evidence did not meet the listing in this case, particularly where Plaintiff has adduced at least some medical evidence to support her claim. *See Tursky*, No. 14-cv-03241, 2015 WL 4064707, at *18–19 (D.N.J. July 2, 2015) (remanding for insufficient step three analysis, even though analysis at other steps "noted some evidence" that could support ALJ's summary conclusion that Plaintiff's impairments did not meet listing 1.04 because the ALJ's later observations did not "set forth the reasons for [her] decision" or "explain her findings," and thus the court could not determine if the contradictory medical evidence substantiated her decision).

record establishes that Plaintiff had positive Spurling's tests, which indicate nerve root compression.").

Second, Defendant argues that Plaintiff cannot meet listing 1.04(A) because she did not point to evidence of positive straight leg raising in both the sitting and supine positions. But that requirement applies when the lower back is involved. Here, Plaintiff has pointed to evidence involving both her cervical and lumbar spine. The ALJ must sort out whether Plaintiff's conditions meet the listing. *See Swanson v. Comm'r of Soc. Sec.*, No. 15-cv-08894, 2017 WL 825199, at *7 (D.N.J. Mar. 2, 2017) ("The ALJ erred by seeming[] to only consider Plaintiff's cervical spine impairment and lumbar spine impairment as a single impairment. Putting aside the issue of whether the medical evidence shows a positive straight leg test in both the sitting and supine positions that would support a finding of disability based on Plaintiff's lumbar spine impairment, the ALJ did not provide any analysis as to whether Plaintiff's cervical spine impairment met the Listing by itself."). Indeed, fact-finding is "more appropriately reserved for the ALJ." *Pizarro v. Colvin*, 208 F. Supp. 3d 669, 675 (E.D. Pa. 2016) (remanding to the ALJ where step three analysis was conclusory).

To be clear, the Court makes no findings as to whether the medical evidence in the record does or does not establish a listing level impairment. On remand, the ALJ may well reach the same decision. But the ALJ must "set forth the reasons for his decision" at step three, *Burnett*, 220 F.3d at 119, and "consider all the evidence and give some reason for discounting that which she rejects." *Masher v. Astrue*, 354 Fed. App'x. 623, 627 (3d Cir. 2009).

### 2. Listing 1.02

Next, Plaintiff argues that the ALJ erred in providing a conclusory step three analysis for Plaintiff's claim that she meets listing 1.02(A). (Pl.'s Br. at 20.) Listing 1.02 provides:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.02. An "inability to ambulate effectively" is defined generally as being unable to ambulate "without the use of a handheld assistive device(s) that limits the functioning of both upper extremities" (except in cases of amputation). 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00B2b(1).

Here, the ALJ's analysis specific to listing 1.02 stated that Plaintiff's "bilateral knee impairments do not meet listing-level severity under 1.02 because there is no evidence of gross anatomical deformity of the hips, knees, shoulders, elbows, or wrists and no medically acceptable imaging showing joint space narrowing, bony destruction or ankylosis of the affected joints resulting in the inability to ambulate effectively or inability to ambulate or to perform fine and gross movements effectively." (R. at 26.) In discussing listing 1.04(C)—as opposed to 1.02—the ALJ found that Plaintiff did not have an inability to ambulate because while Plaintiff uses one cane to ambulate, "the need for one cane alone is insufficient to demonstrate ineffective ambulation." (R. at 26.)

Moreover, in finding that the Plaintiff did not display the inability to ambulate—albeit in the context of listing 1.04(C) and not 1.02—the ALJ stated that the ALJ consulted the non-exhaustive list of factors that may demonstrate ineffective ambulation and found "none of the contemplated situations" present in this case. Although not set forth within the ALJ's decision, those situations "include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven

17

surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00B2b(1).

Again, Plaintiff argues that the ALJ's analysis was too conclusory under *Burnett*. (Pl.'s Br. at 21–24.) Defendant argues that it was not, that Plaintiff cannot demonstrate the requisite inability to ambulate, and that Plaintiff has not submitted required evidence of medical imaging to meet the listing. (Def.'s Br. at 6–8.) The Court expresses no opinion on these matters at this time.[3] Because, as discussed above, the Court has found further record development appropriate in this case, the ALJ, on remand, may take the opportunity to similarly develop the record as it relates to Plaintiff's claim that she meets listing 1.02(A) and clearly explain the effect, if any, of Plaintiff's obesity on this and other listings.[4] *See Smith*, 2012 WL 5867174, at *4.

---

[3] Defendant also argues that whether Plaintiff claims that she is disabled under listing 1.02(A) or 1.04(A), she can only meet those listings if she shows an inability to ambulate effectively. (Def. Br. at 6–7.) Because the Court finds that the ALJ's analysis of Plaintiff's medical evidence was insufficient as it relates to listing 1.04(A), the Court expresses no opinion on the ALJ's analysis of Plaintiff's ambulation for either listing. Any ruling on that issue would be more appropriate after further record development as it relates to Plaintiff's medical evidence for listing 1.04(A), particularly where there is at least some record evidence that could support Plaintiff's claim.

[4] As to Plaintiff's obesity, the ALJ stated that Plaintiff's obesity "had been taken into account in reaching the conclusions" in the decision, "even though no treating or examining medical source may have specifically attributed additional or cumulative limitations to the claimant's obesity." (R. at 28.) The Court notes the parties' arguments about whether this statement was sufficient analysis or too conclusory. (Pl. Rep. Br. at 4; Def. Br. at 9.) The Court also notes that generally, a "blanket statement that an ALJ has considered evidence is not the same thing as an ALJ actually discussing the evidence." *See Ballan v. Commissioner of Social Security*, No. 17-cv-4809, 2018 WL 5307815, at *4 (D.N.J. Oct. 25, 2018) (remanding when, at step three, the ALJ stated that "I have fully considered obesity in context of the overall record evidence in making this decision" because such "conclusory statements" are insufficient). Whether or not the ALJ's slightly more detailed statement was error here, the ALJ should expand the reasoning regarding whether and how Plaintiff's obesity—and any corresponding medical evidence—impacts Plaintiff's ability to meet listings on remand, which the Court finds appropriate on other grounds. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) ("Hence, an ALJ must

### B. Remaining Arguments In The Sequential Process

Finally, Plaintiff advances a series of arguments relating to the ALJ's RFC determination and whether the Commissioner showed, at step five, that a significant number of alternate jobs existed that Plaintiff could perform. Because remand is warranted at step three, the Court need not and does not reach these additional arguments. *See Vivaritas v. Comm'r of Soc. Sec.*, 264 Fed. App'x. 155, 156–57 (3d Cir.2008) ("Inasmuch as further development of the record and the ALJ's decision based on that record may make consideration of steps four and five of the five-step sequential evaluation procedure unnecessary, we do not reach [plaintiff's] other challenges to the ALJ's decision."); *see also Lippincott*, 982 F. Supp. 2d at 375. On remand, the ALJ must fully develop the record and explain findings at step three. If it is necessary to reach step four or five—which it may be—the ALJ must fully develop the record and explain those findings, including findings as to all pertinent medical evidence. If the ALJ rejects particular evidence, the ALJ must explain why.

### IV. CONCLUSION

For the foregoing reasons, the ALJ's determination that Plaintiff was not disabled between May 10, 2013 and December 12, 2015 is **VACATED** and this matter is **REMANDED** for further development of the record.

Dated: 10/31/2018                      /s/ Robert B. Kugler
                                                                      ROBERT B. KUGLER
                                                                      United States District Judge

---

meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step.").